UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:    FRANKLIN BENNETT III,    :    Chapter 13
:
Debtor.    :    Bky. No. 14-13143-ELF
:

# M E M O R A N D U M

## I. INTRODUCTION

In this chapter 13 bankruptcy case, Debtor Franklin Bennett III, ("the Debtor") filed an objection ("the Objection") to the City of Philadelphia's ("the City") proof of claim. The City's claim is a secured claim for $7,528.20 in unpaid water and sewer bills incurred on several properties owned by the Debtor. The Debtor alleges that a portion of the water bill for one of the properties, 1661 Womrath Street ("the Womrath Property") is excessive. (He does not dispute the City's claim with respect to the water bills on his other properties). In response, the City asserts that this court is precluded from considering the Objection on the merits by a determination made in a prior administrative proceeding. Alternatively, the City disputes the merits of the Objection.

For the reasons stated below, I conclude that the bankruptcy court is not precluded from reaching the merits of the Objection. I further conclude that the Objection is meritorious and should be sustained. Consequently, I will enter an order reducing the City's allowed secured claim from $7,528.20 to $4,896.73.

## II. PROCEDURAL HISTORY

On April 21, 2014, the Debtor filed a petition under chapter 7 of the Bankruptcy Code. bankruptcy. (Doc. # 1). At the Debtor's request, the case was converted to chapter 13 by order dated May 2, 2014. (Doc. # 23). The City filed its proof of claim on September 17, 2014, and subsequently amended it on October 20, 2014 to $7,528.20. (Claim #'s 8-1, 8-2). The amount of the City's claim related to the Womrath Property is $2,981.27. Id.

The Debtor filed the Objection on November 26, 2014, disputing the amount of the City's claim. (Doc. # 73). After a number of agreed continuances, a hearing on the Objection was held and concluded on January 13, 2015. The City filed a post-hearing memorandum in support of its position on January 27, 2015. (Doc. # 144). The Debtor declined the opportunity to make a post-hearing submission.

## III. THRESHOLD ISSUE: PRECLUSION

### A.

The Debtor's dispute with the City over the bill for water usage at the Womrath Property was the subject of an administrative proceeding before the Philadelphia Tax Review Board ("the TRB").[1] The administrative proceeding commenced pre-petition and resulted in a postpetition determination adverse to the Debtor. The administrative determination creates a threshold issue

---

[1] The agency's name "Tax Review Board" is a bit of a misnomer. The TRB's function is not limited to determinations regarding "taxes." The agency is part of the Office for Administrative Review, a consolidated entity created in the fall of 1995 by the Mayor of Philadelphia "to provide a single point of contact for the resolution of all non-judicial disputes regarding City taxes, charges, fees and fines." http://www.phila.gov/trb/index.html. The TRB adjudicates taxpayer appeals **from all assessments or bills from the city**, with the exception of real estate tax assessments and real estate tax principal. Id.

raised by the City: whether the bankruptcy court is precluded from considering the Objection on the merits due to the TRB proceedings.[2]

The Debtor filed his petition with the TRB seeking review of the disputed water bill for the Womrath Property prior to filing his bankruptcy petition on June 17, 2013.[3] The TRB

---

[2]  There also is an issue regarding the nature of the record before me that impacts the threshold issue I have identified.

At the hearing in this court on the Objection, the Debtor testified only that he filed the petition for review with the TRB, the master denied the petition and that he exercised his right to appeal the master's decision to the full TRB.  The City offered no contrary evidence at the hearing.  However, In its post-hearing submission, the City attached the affidavit of Monica Hill ("the Hill Affid.").  Ms. Hill is a supervisor in the Tax Review Board Unit of the City's Water Revenue Bureau.  Attached to the Hill Affid. are "file notes."  Ms. Hill did not explain whether they are the "file notes" of the Water Revenue Bureau or the TRB, although I strongly suspect they are notes from the Water Revenue Bureau's computer system, not official TRB records.  In any event, the file notes purport to fill in some of the details of the history of the pre-petition administrative proceedings.

The City had no legal basis to supplement the evidentiary record by attaching evidentiary matter to its post-hearing brief and, ordinarily, I would not consider this evidence.  See, e.g., In re Atlantic Med. Management Servs., Inc., 387 B.R. 654, 657 n.1 (Bankr. E.D. Pa. 2008) (striking exhibits attached to post-hearing brief).  However, from all of the circumstances, I infer that the Debtor does not dispute the additional evidentiary matter and it does not prejudice his position.  So, I will consider the Hill Affid.

[3]  See Philadelphia Code §19-1702(1):

> Every petition for **review of any decision or determination relating to the liability of any person for any unpaid money or claim collectible by the Department of Revenue, for** or on behalf of the City or the School District of Philadelphia, including, but not limited to, any tax, **water or sewer rent**, license fee or other charge, and interest and penalties thereon, **shall be filed with the Tax Review Board** within 60 days after the mailing of a notice of such decision or determination to the petitioner.

(emphasis added).  The Philadelphia Code may be accessed at
http://www.amlegal.com/nxt/gateway.dll/Pennsylvania/philadelphia_pa/thephiladelphiacode?f=templates$fn=default.htm$3.0$vid=amlegal:philadelphia_pa.

appointed a Master to hear the dispute.[4]  The Debtor did not appear at the Master's hearing scheduled on January 24, 2014.  The petition for review was denied, but also, for some undisclosed reason, the hearing was rescheduled to April 22, 2014.  (This, of course suggests, that the denial of the petition for review on January 24, 2014 was not final and was superseded by the grant of a new hearing date.  The record is not definitive on this point, however).[5]

The Debtor filed his bankruptcy petition on April 21, 2014, the day before the rescheduled hearing before the Master.  While the record again is silent, I infer that the Debtor again did not appear at the TRB Master's Hearing on April 22, 2014 and that, as a result, the Master recommended that the TRB deny the petition for review.  The TRB then denied the Debtor's petition "on the merits" on April 30, 2014.[6]

---

[4]      See Philadelphia Tax Review Board Procedural Regulations, Art. 11:

> The Board, in its discretion, may assign a Master to take testimony, review evidence and issue a recommendation for decision to the Board. The Board shall promptly notify, in writing, the taxpayer, the department and any other City official of its decision, after receiving and reviewing the Master's recommendation. After decision, any party shall have the right of a hearing de novo before the Board, if requested within thirty (30) days after the mailing date of the decision.

The regulations are available through a link available at http://www.phila.gov/trb/index.html.

[5]      The "file notes" attached to the Hill Affid. state only: "1/24/14 DENIED DNA."  (Hill Affid., Ex. A).  The Hill Affid. states that the Debtor failed to appear for the January 24, 2014 hearing.  (Hill Affid. ¶ 5).

[6]      The City elicited testimony at the hearing before this court on January 13, 2015 that the TRB denied the petition at the hearing on April 22, 2014.  However, the TRB decision is dated April 30, 2014.  Potentially, this creates some uncertainty whether the April 22nd Master's recommendation or the April 30th letter is the operative document.

The TRB Procedural Regulations describe a process where the petition may be referred to Master
(continued...)

The parties dispute whether the Debtor sought further review of the decision by the full TRB.

Based on these events, the City invokes the doctrine of res judicata and contends that the denial of the Debtor's petition for review precludes the bankruptcy court's consideration of the merits of the Objection.

**B.**

The doctrine of res judicata gives dispositive effect to a prior judgment, including all issues which could have been raised in the earlier proceeding. E.g., Blunt v. Lower Merion School Dist., 767 F.3d 247, 276-77 (3d Cir. 2014). The requisite elements for the doctrine to apply are:

> (1) a final judgment on the merits in a prior suit;
> 
> (2) the same parties or their privies; and
> 
> (3) a subsequent suit based on the same cause of action.

E.g., Id.; M.R. v. Ridley School Dist., 744 F.3d 112, 120 (3d Cir. 2014).

The doctrine is not limited strictly to prior court judgments. It may be invoked when an administrative agency has acted in a judicial capacity and resolved disputed issues properly

---

[6](...continued)
who conducts a hearing and makes a recommendation. The recommendation is then reviewed by the TRB which issues a decision, and the petitioner has a right to a de novo hearing before the full TRB if requested within thirty (30) days. The April 30th decision adopting the Masters' recommendation appears to be consistent with these regulations.

In any event, both TRB actions (the Master's recommendation and the TRB decision) both occurred after the Debtor filed his bankruptcy petition and that is all that matters for present purposes.

before it in which the parties had an adequate opportunity to litigate.  See, e.g., United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966); Duhaney v. Attorney General of U.S., 621 F.3d 340, 347 (3d Cir. 2010); Jorden v. National Guard Bureau, 877 F.2d 245, 249 (3d Cir. 1989); see generally B&B Hardware, Inc. v. Hargis Indus., Inc., 2015 WL 1291915, at *7 (U.S. Mar. 24, 2015) (application of doctrine of issue preclusion may be based on administrative agency determinations).

In this case, the City invokes the doctrine of res judicata based on the TRB's denial of the Debtor's petition for review of his liability on the water bill.  The City argues that all of the res judicata elements are met in that: (1) the TRB denied the petition for review, (2) the parties to the petition for review and the Objection in this court are the same, and (3) the Objection is based on either the same claim actually raised unsuccessfully, or claims that could have been raised, in the Debtor's petition for review before the TRB.

Up to this point, the City's argument is pretty straightforward.  However, one singular fact casts doubt on the applicability of res judicata: the TRB made its decision on **the day after** the Debtor filed his bankruptcy case.[7]  It is therefore, necessary to consider the effect, if any, of the bankruptcy automatic stay, 11 U.S.C. §362(a), on the TRB decision.

---

7   At neither the hearing on the Objection nor in its post-hearing brief has the City argued that the operative agency decision was made at the first hearing on January 24, 2014.  For present purposes, the procedural history can be reduced to the facts that the Debtor filed his petition for review prior to filing his bankruptcy case and that both the TRB hearing and decision on the petition for review occurred post-petition.

**C.**

Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition acts as a "stay . . . of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ." 11 U.S.C. §362(a)(1).

It is well established that judicial, administrative or other proceedings, including adjudicative decisions, that occur after the commencement of a bankruptcy case and in violation of the automatic stay are void. E.g., In re Myers, 491 F.3d 120, 128 (3d Cir. 2007); In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994); In re Iezzi, 504 B.R. 777, 784 (Bankr. E.D. Pa. 2014). Thus, if the automatic stay applies to the petition for review, the April 30, 2014 TRB decision is void and provides no basis for the application of res judicata because there is no valid, pre-petition adjudication.

The City argues, however, that §362(a)(1) applies only to proceedings "against the debtor" and that the petition for review before the TRB is not such a proceeding. The City contends that the TRB proceeding was an offensive proceeding initiated by the Debtor that is not subject to the automatic stay. With the automatic stay inapplicable, the City depicts the TRB determination as a valid decision that provides an adequate foundation for the application of res judicata.[8]

I agree with the City's general statement of the law: §362(a)(1) extends the automatic stay only to actions against the debtor and not to affirmative claims brought by the debtor against

---

[8]   The City's argument also assumes that the Debtor was not stayed from requesting a de novo appeal of the April 30, 2014 decision and that, not having done so in a timely fashion, the decision is sufficiently final to warrant application of res judicata. The City overlooks that there is a factual dispute whether the Debtor appealed the April 30, 2014 TRB decision.

other parties. See, e.g., Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991); 4Kids Entm't, Inc. v. Upper Deck Co., 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011). However, I respectfully, but firmly, disagree with the City's characterization of the Debtor's petition for review as an offensive proceeding initiated by the Debtor.

**D.**

For more than thirty (30) years, the controlling precedent in this Circuit on the meaning of the term "against the debtor" in §362(a)(1) has been Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446 (3d Cir. 1982).  In St. Croix Condominium, the Court of Appeals held that the applicability of the automatic stay to a pre-petition lawsuit is determined by evaluating the nature of the action at its "inception" and that, for purposes of §362(a)(1), the nature of the proceeding does "not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs." 682 F.2d at 449.  Further, the automatic stay "stay[s] all appeals in proceedings that were <u>originally brought</u> against the debtor, regardless of whether the debtor is the appellant or appellee." Id. (emphasis in original).  Stated slightly differently, the question is: which party was in an "offensive posture" when the proceedings between the parties began?

I conclude that the dispute between the Debtor and the City commenced with the City in the offensive posture.  The proceedings began when a City agency (the Water Revenue Bureau) issued a bill – a formal demand for payment for water and sewer service provided to the Debtor's property.  The issuance of that bill was an administrative act to collect a debt, with the

City in an offensive posture. The Debtor's petition for review was nothing more than a defensive response to the City's demand for payment. In the petition for review, the Debtor sought only a modification of the City's liability determination in the form of a reduction of his bill. By comparison, "offensive" debtor proceedings against third parties that fall outside §362(a)(1) typically involve claims that would result in the collection of money from the third party, i.e., claims that would inure to the benefit of and augment the bankruptcy estate, not merely a diminution of a debtor's liability. See, e.g., Carley Capital Group v. Fireman's Fund Ins. Co., 889 F.2d 1126, 1127 & n.10 (D.C. Cir. 1989); In re Way, 229 B.R. 11, 12 (B.A.P. 9th Cir. 1998); Houey v Carolina First Bank, 890 F. Supp. 2d 611, 615-17 (W.D.N.C. 2012).

The above characterization of the nature of the proceedings between the City and the Debtor is reflected in the TRB regulations themselves. Article 3 of the Regulations defines a petition for review as follows:

> A petition . . . filed by any taxpayer who is **contesting any decision or determination** relating to his/her liability for any unpaid money or claim collectible by the Department of Revenue for or on behalf of the City of the School District of Philadelphia.

(emphasis added).

The operative phrase here is "contesting any decision or determination." These words demonstrate that the City originally was in the offensive posture because it first "determined" that the Debtor owed it money. The Debtor's petition to the Board was an appeal of that "determination" of his liability. The Debtor's pro-active status as the "appellant" does not change the Debtor's original defensive posture for purposes of 11 U.S.C. §362(a)(1). See St. Croix, 682 F.2d at 448-49.

My conclusion is reinforced by the underlying purposes of the automatic stay, which is twofold: first, to provide the debtor relief or a "breathing spell" from creditor collection efforts, and second, to protect creditors against the collection efforts of other creditors to ensure a just disposition of the bankruptcy estate. See In re Krystal Cadillac, 142 F.3d 631, 637 (3d Cir. 1998) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)); Maritime Elec. Co., 959 F.2d at 1204; St. Croix, 682 F.2d at 448-49; Houey, 890 F. Supp. 2d at 616-17; Iezzi, 504 B.R. at 779-80. The automatic stay is intended to cast a wide net and is applied broadly to effectuate its purposes. See Krystal Cadillac, 142 F.3d at 637. An incomplete adjudication of a debtor's liability on a claim, as is the case presented here, is just the type of proceeding that the automatic stay was designed to freeze.

For these reasons, I conclude that the Debtor's petition for review was an appeal from an administrative action initiated by the City – i.e., the administrative determination that the Debtor was liable to the City for unpaid water bills in a certain sum – and therefore, all proceedings emanating from that initial determination are subject to the automatic stay. It follows that the April 22, 2014 TRB Master's recommendation and April 30, 2014 TRB determination of liability are void and cannot be the basis for the application of res judicata.[9]

---

[9] There is another, related reason why res judicata would be inapplicable if the automatic stay applies to the petition for review. Application of the doctrine requires a certain degree of finality to the adjudicative decision made by the administrative agency. If a bankruptcy stay takes effect prior to the expiration of a debtor's appeal period, **and there is a right to *de novo* review** of the matter on appeal that has not expired, the prior determination is not sufficiently final and the doctrine of res judicata does not apply. See Restatement (Second) of Judgments §13 cmt. f ("a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo")

(continued...)

**E.**

The City seeks to avoid this outcome by analogizing this matter to petitions brought by debtors in the Tax Court challenging pre-bankruptcy tax assessments levied by the IRS. (City Mem. at 4-6). In the Third Circuit, debtor-instituted proceedings challenging tax assessments are not considered proceedings "against the debtor" within the meaning of 11 U.S.C. §362(a)(1). See Rhone-Poulenc Surfactants & Specialties, L.P. v. C.I.R., 249 F.3d 175, 180 (3d Cir. 2001) (following Roberts v. Comm'r, 175 F.3d 889, 893–96 (11th Cir.1999) and Freeman v. Comm'r, 799 F.2d 1091 (5th Cir. 1986) (per curiam) and declining to follow Delpit v. Comm'r, 18 F.3d 768, 770–73 (9th Cir. 1994)). I conclude, however, that Rhone-Poulenc is not controlling precedent.

Rhone-Poulenc is distinguishable simply because it addresses petitions to the Tax Court and tax debts are treated differently than other debts in the Bankruptcy Code. The Code is littered with special rules and procedures to accommodate taxing authorities and tax debts. See e.g., 11 U.S.C. §362(a)(8) (staying certain proceedings determining the tax liability of a debtor before the U.S. Tax Court); 11 U.S.C. §362(b)(9) (exempting from the automatic stay actions by government taxing authorities including audits, notice and

---

[9](...continued)
(1982); see also In re Alberts, 381 B.R. 171, 178-79 (Bankr. W.D. Pa. 2008).

The Debtor testified that he filed an appeal from the TRB decision. The City offered the Hill Affid. stating that the Debtor did not submit an appeal to the full TRB. (Hill Affid. ¶ 9).

I find it unnecessary to resolve this factual issue because it has no bearing on the outcome of this contested matter. As explained in the text supra, I conclude that the automatic stay applies to the petition for review and that the TRB decision made postpetition is void. In the absence of a valid TRB decision, the res judicata doctrine is inapplicable and the finality of the April 30, 2014 TRB decision is immaterial.

assessments of tax deficiencies, requests to pay deficiencies, and demand to file tax returns); 11 U.S.C. §505(a) (delineating the division of authority between the bankruptcy court and other judicial or administrative tribunals to determine tax liability).

Further, in Rhone-Poulenc, the Third Circuit adopted and followed the 11th Circuit's decision in Roberts. See 249 F.3d at 180. In Roberts, the court rejected the 9th Circuit's characterization in Delpit, of the Tax Court proceedings as a continuation of administrative proceedings originally brought against the debtor, Roberts, 175 F.3d at 894-95, and, instead, found that the appeal to the Tax Court was a separate, independent judicial proceeding distinct from the initial liability determination made by the IRS. Id. (citing Freytag v. Comm'r, 501 U.S. 868, 890-91 (1991)).

It is significant, however, that the Roberts' court gloss on 11 U.S.C. §362(a)(1) was influenced heavily by a policy concern that is inapplicable in the present matter – a concern for uniformity. Id. at 895. A federal taxpayer has two (2) options to dispute his or her tax liability: the taxpayer can choose not to pay the assessed tax and appeal the liability determination to the Tax Court; or the taxpayer may pay the tax liability and sue for a refund in federal district court or federal claims court. Id. If the taxpayer files a bankruptcy after invoking the second option, the pending refund suit would place the taxpayer in the offensive posture of seeking a return of money or property that would augment the bankruptcy estate. Therefore, the pending refund lawsuit falls outside the scope of the automatic stay, §362(a)(1). The Roberts court reasoned that first option (appealing to the Tax Court) also should be outside the scope of the automatic stay,

because it concluded that it made little sense to stay one proceeding and allow the other when both determine the same issue. Id. at 895.

The uniformity concerns expressed in Roberts are inapplicable in TRB appeals involving non-tax municipal claims, such as disputes over unpaid water bills. There is only one (1) appeal mechanism for disputing a water bill in the City of Philadelphia. Extension of Rhone-Poulenc to all appeals from initial administrative agency determinations that a party is pecuniarily liable, as the City urges, would have dramatic repercussions. It would create an enormous hole in 11 U.S.C. §362(a)(1) for the sole benefit of governmental units. That outcome that finds no expression in the text of §362(a)(1) and is belied by the express statutory exception to the automatic stay for governmental units. Cf. 11 U.S.C. §362(b)(4) (setting forth a circumscribed governmental unit exception to §362(a) for exercise of police or regulatory power, but not for the enforcement of a money judgment). If faced with the issue, I consider it unlikely that the Court of Appeals would construe §362(a)(1) in the radical manner urged by the City.

## IV. FINDINGS OF FACT

Having rejected the City's preclusion argument, I turn to the merits of the Objection. Based on the evidence presented at the January 13, 2015 hearing,[10] I make the following findings of fact.

1. If a property is vacant in the City of Philadelphia and there is no water usage, the City will bill the property owner a minimum service charge.

2. At some point between 2005 and 2007, the Debtor purchased the Womrath Property.

3. The Womrath Property was vacant for some period of time while the Debtor undertook renovations.

4. For about two (2) years after the renovations were completed, i.e., until approximately September 2010, the property was occupied by a tenant.

5. While the Womrath Property was occupied prior to September 2010, the water bills fluctuated month to month. For example, April, 2010 was $94.41; May, $89.63; June, $103.94; July, $116.66; August, $48.07. (See Ex. C-1).

6. After the Debtor's tenant moved out in or around September 2010, the Womrath Property was vacant until approximately January, 2013.[11]

7. The water bills issued by the City during the period from September 2010 up to January 2013

---

[10] The evidence includes the testimony of the Debtor and Janice Bell, City of Philadelphia Department of Water Revenue, Customer Service Representative, and the water bill for the Womrath Property from March, 2009 until December, 2014.

[11] I have credited the Debtor's unrebutted testimony on this point.

while the Womrath Property was vacant, ranged from $14.46 to $26.34 per month. For sixteen (16) straight months, between September 2011 to December 2012 the bill was exactly $24.44 each month. (See id.).

8. The City billed the Debtor for only the minimum service charge during the period from September 2010 up to January 2013, while the property was vacant.[12]

9. Some time around January 2013, the current tenant moved into the property.

10. While the Debtor was preparing the property for the current tenant, he discovered that vandals had disconnected the water meter and stripped the house of copper piping.

11. Around that time, the Debtor notified the Water Department and a Water Department representative came to the property to replace or repair the meter.

12. After ensuring that the meter was working correctly, the Water Department, on May 16, 2013, issued the Debtor an adjustment of his water bill for the period of August 24, 2010 to January 13, 2013, adding $2,631.47 to the bill. (See id.).

13. The adjustment was intended as an estimate of the approximate water usage of the property during the time in which the meter was not working.

---

[12] Ms. Bell testified that during the period of time that the meter was not working properly at the Womrath Property, the City likely billed the Debtor at the minimum monthly amount because there was no usage at the Womrath Property. She indicated that the monthly charge of $24.44 for the period September 2011 through December 2012 was for storm water runoff and the minimum service charge. (Notes of Testimony at 3:14:15; 3:30:00). Because the other amounts that were billed while the property was vacant were of similar amounts, I find it more likely than not that the amounts billed during the previous year, i.e., September 2010 through August 2011, also were minimum monthly service charges.

14. As of the commencement of his bankruptcy case, and taking into account payments made on the account, and as part of its proof of claim, the City asserted that the Debtor owed $2,981.27 for unpaid water and sewer services at the Womrath Property.

## V.  DISCUSSION

A proof of claim "is deemed allowed, unless a party in interest, including . . . a debtor . . . objects." 11 U.S.C. §502(a).  Objections to a proof of claim must be "in writing and filed . . . with notice . . . delivered to the claimant.  Fed. R. Bankr. P. 3007(a).  If a creditor's proof of claim "alleges facts sufficient to support a legal liability to the claimant" then the proof of claim is prima facie valid.  In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992).  The burden of proof on the validity of the claim shifts to an objecting debtor, who must "produce evidence sufficient to negate the prima facie valid claim . . . ."  VFB LLC v. Campbell Soup Co., 482 F.3d 624, 636 (3d Cir. 2007).

At the January 13, 2015 hearing, the Debtor provided sufficient evidence to rebut the prima facie validity of the City's claim.  As the claimant, the burden of proving the validity of its claim lies with the City.  See, e.g., In re Wells, 463 B.R. 320, 326 (Bankr. E.D. Pa. 2011).

Prior to September 2010, consistent with the Debtor's testimony, the fluctuations in the amount of the water bill indicated that the property was occupied and water was being used.  In the period between September 2010 and January 2013, the initial bills were much lower and more uniform in amount, also consistent with the Debtor's

testimony that the property was vacant. Subsequently, the City came to believe that the low bills were the product of a defective meter, not less (or no) water usage. However, the Debtor testified credibly that the property was vacant between September 2010 and January 2013 and that there was no water usage during that time frame. Accordingly, the Debtor should have been charged only for storm water runoff and the minimum service charge.

On this record, I am convinced that the City's May 16, 2013 adjustment of the Womrath Property water bill was incorrect. The Debtor is not liable for estimated water usage during the period of September 2010 to January 2013 because the Womrath Property was unoccupied at that time and the City had already billed the Debtor for the monthly minimum charges. Consequently, I will reduce the City's claim against the Womrath Property by the May 16, 2013 adjustment of $2,631.47.

## VI. CONCLUSION

For the reasons set forth above, the Debtor's Objection to the City's proof of claim will be sustained. The claim will be reduced by $2,631.47, resulting in an allowed secured claim of $4,896.73.

Date: **April 7, 2015**

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**